IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ANTHONY HOLMES,
    Petitioner,

vs.                                      Case No.: 5:13cv49/MCR/EMT

SECRETARY FLORIDA DEPARTMENT
OF CORRECTIONS,
    Respondent.
_____/

**REPORT AND RECOMMENDATION**

      This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1). Respondent filed an answer and relevant portions of the state court record (doc. 19). Petitioner filed a reply (doc. 21).

      The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.    BACKGROUND AND PROCEDURAL HISTORY

      The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 19).[1] Petitioner was charged in the Circuit Court in and for Jackson County,

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 19). If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

Florida, Case No. 2011-CF-144, with one count of fleeing or attempting to elude (high speed reckless) (Count I) and one count of possession of cocaine with intent to sell (Count II) (Ex. B). Each charge was a second degree felony carrying a maximum penalty of fifteen (15) years of imprisonment (*id.*). On July 19, 2011, Petitioner entered a written plea agreement with the State, pursuant to which he agreed to plead no contest to both charges in exchange for a sentence of two, concurrent 5-year terms of drug offender probation (Ex. C). Petitioner also agreed to undergo a drug evaluation and follow the recommendations set forth therein; and he agreed to complete 25 hours of employment or community service per week (*id.*). The court accepted Petitioner's plea and sentenced him in accordance with the plea agreement (Ex. D). The court's order of probation, dated July 27, 2011, nunc pro tunc to July 19, 2011, included the drug evaluation and employment/community service requirements, and also included a requirement that Petitioner remain at his residence between 7:00 p.m. and 7:00 a.m. (Ex. D, ¶¶ (14)2., (16), (17)(a), (17)(g)).

On August 26, 2011, the State filed an affidavit alleging Petitioner violated the conditions of his probation by (1) failing to remain at his residence on August 21, 2011 at 7:25 p.m., (2) failing to provide his probation officer with documentation he had performed 25 hours of employment or community service, despite his probation officer's instructing him on July 22, 2011 to complete the hours, and (3) failing to undergo a drug evaluation scheduled for August 22, 2011 at 8:30 a.m., despite his probation officer's instructing him on August 19, 2011 to do so (Ex. E). The State filed a notice of intent to seek habitual felony offender ("HFO") status (Ex. F). On November 1, 2011, Petitioner entered a written plea agreement with the State, pursuant to which he admitted he violated the conditions of his probation and agreed to revocation of his probation and a sentence of forty-eight (48) months of imprisonment with credit for all time served and with no probation to follow (Ex. G). The same day, the court accepted Petitioner's plea and sentenced him in accordance with the plea agreement (Exs. H, I, J, K).

On April 19, 2012, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure, and a motion for appointment of counsel (Ex. L). In an order rendered October 3, 2012, the state circuit court summarily denied the Rule 3.850 motion (Ex. N). Petitioner appealed the decision to the Florida First District Court of Appeal ("First DCA"), Case No. 1D12-4923 (Exs. O, P). The First DCA affirmed the judgment per curiam without written

opinion on December 27, 2012, with the mandate issuing January 23, 2013 (Ex. R). Holmes v. State, 104 So. 3d 1091 (Fla. 1st DCA 2012) (Table).

Petitioner filed the instant federal habeas action on February 8, 2013 (doc. 1). Respondent concedes the petition is timely (doc. 19 at 7).

II. STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2] The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to

---

[2] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

>claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court

must independently consider the merits of the petitioner's claim. Moreover, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See* Henderson v. Campbell, 353 F.3d 880, 890 n. 15 (11th Cir. 2003).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87, 178 L. Ed. 2d 624 (2011)). The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See* Gill, *supra* at 1291 (citing Harrington, 131 S. Ct. at 786). Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the

Supreme Court. *See* Harrington, 131 S. Ct. at 786; *see also* Gill, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the

petitioner's claims.  *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claim.

III.   PETITIONER'S CLAIM

<u>Ground One:  "Trial counsel was ineffective for failing to investigate Defendant's alibi witness(es) and for mis-advising him in that the State failed to prove willful or intentional violations of probation."</u>

Petitioner contends counsel was ineffective for failing to investigate evidence that would have supported an alibi defense and shown that the violations of the conditions of his probation were unintentional (doc. 1 at 3–6; doc. 21 at 1–2).  He alleges he informed defense counsel he was at home with his father, Horace Holmes, Jr., on the day he allegedly violated his curfew, but he did not hear his probation officer's knock on the door, because he suffers from sleep apnea (*id.*).  Petitioner alleges he told counsel his condition could be verified by his father, his medical records, and his application for benefits filed with the Social Security Administration ("SSA") (*id.*).  Petitioner alleges he also advised counsel he had a defense to the charge that he failed to comply with the employment/community service requirement, because the probation order did not specify a "starting or ending date" with regard to the requirement (*id.*).  Petitioner alleges defense counsel advised him it would be in his best interest to accept the State's plea offer of forty-eight (48) months and waive the revocation hearing, because if he lost at the hearing, the court could impose an HFO sentence of ten (10) years (*id.*).  Petitioner contends but for counsel's alleged deficiencies, he would have insisted on going to trial (*id.*).  He further contends if counsel had presented the above-described evidence as mitigating evidence at sentencing, there is a reasonable probability the court would have imposed a different sentence (*id.*).

Respondent contends Petitioner presented part of his claim to the state courts in his Rule 3.850 motion, specifically, his contention that counsel (1) failed to investigate his father as an alibi witness to the curfew violation, (2) failed to argue that Petitioner's failure to complete the employment/community service requirement was not willful or intentional, and (3) failed to argue

that Petitioner's failure to attend the drug evaluation was not willful (doc. 19 at 16–39). Respondent contends Petitioner did not mention in his Rule 3.850 motion counsel's failure to obtain other evidence of his sleep apnea, namely, his SSA application and medical records; therefore, that aspect of his claim is unexhausted and procedurally barred (*id.* at 16–22). Respondent contends the state court's adjudication of the remainder of Petitioner's claim was not contrary to or an unreasonable application of clearly established federal law (*id.* at 16–39).

As to the exhaustion issue concerning counsel's failure to investigate the "alibi" defense to the curfew violation, the state court record demonstrates that Petitioner argued in his Rule 3.850 motion that his plea was involuntary because counsel failed to investigate evidence of his "medical condition . . . sleep apnea" (Ex. L at 6–10). Petitioner specifically identified only his father as the source of evidence to support this "alibi" defense, and did not mention medical records or an application for SSA benefits (*id.*). However, these additional sources of evidence do not place his claim in a significantly different legal posture or fundamentally alter the claim adjudicated by the state courts. Therefore, Petitioner's new factual allegations do not render his claim unexhausted.

      1.      Clearly Established Federal Law

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." Lafler v. Cooper, — U.S. —, 132 S. Ct. 1376, 1384, 182 L. Ed. 2d 398 (2012) (citing Missouri v. Frye, — U.S. —, 132 S. Ct. 1399, 1404, — L. Ed. 2d — (2012), and McMann v. Richardson, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)). "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." Lafler, 132 S. Ct. at 1387. The two-part test articulated in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies to claims that counsel was ineffective during plea negotiations. Lafler, 132 S. Ct. at 1384 (applying Strickland's two-part test to federal habeas petitioner's claim that counsel was ineffective for advising him to reject a plea offer); Frye, 132 S. Ct. at 1404, 1409–10 (applying Strickland's two-part test to federal habeas petitioner's claim that counsel was ineffective for failing to communicate a prosecution plea offer before it lapsed); Hill v. Lockhart, 474 U.S. 52, 48, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (applying Strickland's two-part test to defendant's challenge to his guilty plea based on ineffective assistance of counsel).

Strickland's first prong requires a defendant to show "'that counsel's representation fell below an objective standard of reasonableness.'" Hill, 474 U.S. at 57 (quoting Strickland, 466 U.S. at 688). The focus of inquiry under the performance prong of the Strickland standard is whether counsel's assistance was "reasonable considering all the circumstances." *See* Strickland, 466 U.S. at 691. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Indeed, the Supreme Court warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court . . . . Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts. That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

McMann v. Richardson, 397 U.S. 759, 769–70, 90 S. Ct. 1441, 1448, 25 L. Ed. 2d 763 (1970).

In a plea situation, counsel must provide advice "within the range of competence demanded of attorneys in criminal cases." Hill, 474 U.S. at 56–57 (quoting McMann, 397 U.S. at 771). Under this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused. Stano v. Dugger, 921 F.2d 1125, 1150–51 (11th Cir. 1991). Absent such blatant errors, however, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." Yordan v. Dugger, 909 F.2d 474, 477 (11th Cir. 1990). The Eleventh Circuit has commented that "[t]he right to competent plea bargain advice is at best a privilege that confers no certain benefit," because a defendant "may make a wise decision" without assistance of counsel or a "bad one despite superior advice from his lawyer." Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam). "[C]ounsel

owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between [entering a plea] and going to trial." *Id.* This requires counsel to "offer his informed opinion as to the best course to be followed" and impart "a general knowledge of the possible legal consequences of facing trial" to the defendant. *Id.* Therefore, a defendant's failure to "correctly assess every relevant factor entering into his decision" does not undermine a validly entered guilty plea. *Id.* at 1509.

Strickland's second prong requires a defendant to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of pleas, "[t]he . . . 'prejudice' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 59.

"Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S.356, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Richter, 131 S. Ct. at 788. As the Richter Court explained:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Id.* (citations omitted).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999).

    2.    Federal Review of State Court Decision

The state circuit court adjudicated Petitioner's claim as follows:

The Defendant was charged by Information with Fleeing and Attempting to Elude and Possession of a Controlled Substance with Intent to Sell. (*See* attached Information). On July 19, 2011, he entered a negotiated plea of no contest to the charges and was sentenced to 5 years of drug offender probation. (*See* attached Plea agreement). On August 26, 2011, a VOP affidavit and warrant were issued, alleging that the Defendant violated special condition 17-A of the order of probation by failing to remain at his residence during curfew, violated special condition 2 by failing to successfully complete the 25/25 condition of community service, and violated special condition 17-G by failing to undergo [a] drug and alcohol evaluation. (*See* attached). The State then filed a notice of intent to seek habitual offender sanctions. (*See* attached notice). On November 1, 2011, the Defendant admitted violating his probation in exchange for a sentence of 48 months of imprisonment in [the] DOC. (*See* attached VOP Plea agreement). Defendant did not appeal.

The Defendant now files the instant Motion for Post Conviction Relief raising three grounds of ineffective assistance of counsel. In order to succeed on an ineffective assistance claim, a defendant must show both deficient performance by counsel and prejudice resulting from that deficient performance. See *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hannon v. State*, 941 So. 2d 1109, 1118–1119 (Fla. 2006). When a defendant challenges a guilty plea based on ineffective assistance of counsel, under the prejudice prong of *Strickland*, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." See *Hill v. Lockhart*, 414 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). To determine whether a reasonable probability exists that the defendant would have insisted on going to trial, a court should examine: the totality of the circumstances surrounding the plea, including such factors as whether a particular defense was likely to succeed at trial, the colloquy between the defendant and the trial court at the time of the plea, and the difference between the sentence imposed under the plea and the maximum possible sentence the defendant faced at trial. See *Stephens v. State*, 915 So. 2d 405 (Fla. 2007).

In Ground 1, Defendant claims that his counsel was ineffective for failing to investigate an alibi witness who would have testified that he did not violate condition 17-A because he was home at the time the probation officer arrived. He claims that he has sleep apnea and did not hear the knock, and that he lives with his father, Horace Holmes Jr., who has a hearing impairment. He claims that his father would have provided exculpatory evidence and would have testified that he was home that night. The Defendant claims that he told counsel to investigate these facts and call his father. However, he claims that counsel told the Defendant that it would be in his best interest to accept the State's offer of 48 months DOC and waive the revocation hearing, because if he lost the Court would enhance his sentence to 10

years because the State had filed a habitual offender notice. He claims that the reason he declined a revocation hearing was "due to defense counsel's ineffectiveness."

In this case, the transcript of the VOP plea/sentencing hearing reflects that the plea was freely and voluntarily entered. (*See* attached transcript). Furthermore, a defendant's guilty or no contest plea cuts off all inquiry into matters that precede it. Thus, a defendant is barred from contesting events happening before the plea. *See Smith v. State*, 41 So. 3d 1037, 1040 (Fla. 1st DCA 2010); *See also Clift v. State*, 43 So. 3d 778, 779–780, 2010 WL 2976929 (Fla. 1st DCA 2010) citing *Stano v. State*, 520 So. 2d 278, 279–280 (Fla. 1988) and *Davis v. State*, 938 So. 2d 555, 556–557 (Fla. 1st DCA 2006).

Additionally, the Defendant received a negotiated sentence of 48 months DOC with no habitual offender designation. The original charges he faced were two (2) second degree felonies with a potential 15 year sentences [sic] on each, and the State had filed notice to have him sentenced as a habitual offender after he violated his probation. Further, the Defendant admits that he knew, prior to the entry of the VOP plea, that his father could be a witness and asked counsel, prior to the entry of the entry plea, to investigate and call his father to testify. However, he still chose to enter the plea. Nor does the Defendant's claim that his counsel told him that it would be in his best interest to accept the State's offer of 48 months and waive the revocation hearing, because if he lost the Court would enhance his sentence because the State had filed a habitual offender notice, constitute ineffective assistance. This was simply part of counsel's obligation to convey all plea offers to his client and to inform his client of his options and potential penalties. Therefore, the Defendant cannot now assert that his plea was not knowingly and voluntarily entered where he concedes he was well aware of his counsel's deficiencies prior to the entry of his plea. *See e.g. Davis*, *supra* 938 So. 2d 555, 556–557.

In Ground 2, Defendant claims that his counsel was ineffective in failing to argue the reasons why he "unintentionally" violated condition 2 of the order and to argue that there was no willful violation. He claims that his failure to complete the 25/25 service requirement was not a willful and substantial violation because neither the court nor the probation officer ever informed him when it was to begin and when it would end. He claims to have brought this to defense counsel's attention numerous times before sentencing, and counsel responded that there was nothing he could do. He claims that he explained to counsel that he had another reason for not starting the 25 hours—specifically, that he had spent "countless days" looking for work at the One Stop Career Center. He argues that he told counsel to stop by the career center and speak with the caseworker who was assisting him, and that if counsel had done this, the caseworker would have confirmed that he had been diligently trying to find work. He claims that counsel did not investigate and depose

the caseworker despite assuring the Defendant he would do so. The Defendant argues that counsel was only concerned about convincing him to take the plea offer, because if found guilty of the violations, the judge would impose an enhanced sentence since the State had served notice to habitualize him.

For the reasons already outlined in Ground 1 above, this Ground is also without merit. The transcript of the VOP plea/sentencing bearing reflects that the plea was freely and voluntarily entered. (*See* attached transcript). The Defendant received a negotiated sentence of 48 months DOC with no habitual offender designation, when he was facing two potential 15 year sentences with habitualization. The Defendant knew all of the alleged deficiencies that he now complains of prior to entering the admission to violating his probation, but he still chose to enter the admission. By entering a plea to the charges, the Defendant waived his right to have counsel investigate or put forward a defense.

Finally, in Ground 3, the Defendant claims that his counsel was ineffective for failing to investigate why he was not able to undergo [a] drug and alcohol evaluation. He claims that he informed counsel prior to sentencing that the accusations that he failed to under evaluation "were not willful and substantial." He claims that he repeatedly told defense counsel that the probation officer never spoke with him directly, but instead called his cell phone and left a message for him to report to CARE for an evaluation on August 22, 2011. He claims that he "advised all parties" that he did not receive the message because his service had been disconnected for non-payment. The Defendant claims that he went to the probation office on August 22, and when his probation officer asked him what he was doing there and told him he was supposed to be at CARE, and asked if the Defendant received his message [sic]. He claims that he told the officer about his phone being disconnected, and that the officer told him that the officer would reschedule his appointment with CARE. He claims "this situation was explained to defense counsel in detail but he still failed to investigate," and that if counsel had, he would have been able to establish the violation was not willful or substantial.

Again, for the same reasons outlined in Grounds 1 and 2, this Ground is without merit. The transcript of the VOP plea/sentencing hearing reflects that the plea was freely and voluntarily entered. (*See* attached transcript). The Defendant received a negotiated sentence of 48 months DOC with no habitual offender designation, when he was facing two potential 15 year sentences with habitualization. The Defendant knew all of the alleged deficiencies that he now complains of prior to entering the admission to violating his probation, but he still chose to enter the admission. By entering a plea to the charges, the Defendant waived his right to have counsel investigate or put forward a defense.

(Ex. N at 42–44). Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (Ex. R).

As set forth in the state court's order, the court found as fact that on November 1, 2011, Petitioner admitted he violated his probation, and he made the admission in exchange for a sentence of forty-eight (48) months of imprisonment. The court also found that Petitioner knew all of the alleged deficiencies of counsel prior to entering his admission, yet he still chose to enter the admission in exchange for the 48-month sentence. Petitioner has not shown by clear and convincing evidence that these findings were unreasonable; therefore, they are entitled to deference under the AEDPA.

Further, the court's findings are supported by the record. On November 1, 2011, Petitioner signed a written plea agreement ("Agreement") stating he understood that by signing the Agreement, he was admitting he violated the conditions of his probation (Ex. G). He stated he understood he was giving up his right to an evidentiary hearing, the right to require the State to prove the violation by the greater weight of the evidence, the right to have the judge decide whether he violated his probation, the right to see and hear the witnesses against him and to have his lawyer question them, and the right to present witnesses or other evidence, or any defense he may have (*id.*). By signing the Agreement, he stated his lawyer explained the nature of the violation(s) alleged and any defenses he may have, and he was satisfied with his lawyer's advice and help (*id.*). He also stated he was admitting he violated the conditions of his probation because it was in his best interest, and it was what he wished to do of his own free will (*id.*). By signing the Agreement, he agreed that the judge could find a factual basis for the admission based upon the affidavit filed by his probation officer (*id.*). Petitioner agreed that his probation would be revoked, and he would serve forty-eight (48) months in prison, with credit for all time he had served (*id.*). At the plea and sentencing hearing later that day, Petitioner made the following sworn statements to the trial court:

> THE COURT: All right. Mr. Holmes, raise your right hand, please.
>
> (Defendant Sworn)
>
> THE COURT: All right. I've just been handed a plea form. Is this your signature there near the bottom?

>THE DEFENDANT: Yes, sir.
>
>THE COURT: Did you go over this form with Mr. Blount [defense counsel] before you signed it?
>
>THE DEFENDANT: Yes, sir.
>
>THE COURT: You understand you're admitting that you violated. I'm going to revoke, adjudicate you guilty, give you 48 months DOC, credit for all time served, no probation to follow. Once you do the time, you're through with this case. Do you understand that?
>
>THE DEFENDANT: Yes, sir.
>
>THE COURT: Has anybody promised you anything else to get you to do this?
>
>THE DEFENDANT: No, sir.
>
>THE COURT: Has anybody threatened you in any manner to get you to do this?
>
>THE DEFENDANT: No, sir.

(Ex. H).

Given the state court record and the Rule 3.850 court's factual findings, this court cannot say that the state court's conclusion—that Petitioner knowingly and voluntarily entered his plea, and he knew all of the alleged deficiencies of counsel prior to entering the admission to violating his probation but still chose to enter the plea—was contrary to or an unreasonable application of clearly established Supreme Court law. Therefore, Petitioner is not entitled to federal habeas relief.

IV.   CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1. That the petition for writ of habeas corpus (doc. 1) be **DENIED**.
2. That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 26<u>th</u> day of November 2013.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**